**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ROBERT J. GACH, JR., and VENTURA'S | : | |
| RESTAURANT & PIZZERIA, LLC, | : | No. 1:12-cv-1557 |
| | : | |
| Plaintiffs, | : | Hon. John E. Jones III |
| | : | |
| v. | : | |
| | : | |
| FAIRFIELD BOROUGH, ROBERT | : | |
| STANLEY, CARROLL VALLEY | : | |
| BOROUGH, RON HARRIS, and | : | |
| RICHARD HILEMAN II, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM

### February 5, 2013

Pending before the Court in this civil rights action is the Defendants' Motion to Dismiss the Plaintiffs' Amended Complaint. (Doc. 26). The Motion has been fully briefed and is thus ripe for our review. Because we conclude that the Plaintiffs have failed to state facts to support any of the claims in their Amended Complaint, we will grant the said Motion in its entirety.

## I.     PROCEDURAL HISTORY

Plaintiffs Robert J. Gach, Jr., and Ventura's Restaurant & Pizzeria, LLC, commenced this lawsuit with the filing of three-count Complaint (doc. 1) on August 9, 2012. The Defendants' responded with a Motion to Dismiss (doc. 16)

filed October 12, 2012. Thereafter, on October 26, 2012, the Plaintiffs filed an

Amended Complaint (doc. 23), effectively mooting the then-pending motion.

Therein, the Plaintiffs assert claims for civil rights violations pursuant to 42 U.S.C.

§ 1983, conspiracy to commit civil rights violations pursuant to 42 U.S.C. §

1985(3), and negligence in failing to prevent civil conspiracy pursuant to 42 U.S.C.

§ 1986. On November 9, 2012, the Defendants filed the presently pending Motion

to Dismiss (doc. 26) and accompanying brief (doc. 27). The Plaintiffs filed

opposition papers (doc. 28) on November 21, 2012, and the Defendants elected not

to file a reply. The Motion is thus fully briefed and ripe for our review.

## II.    STANDARD OF REVIEW

In considering a motion to dismiss pursuant to Rule 12(b)(6), courts "accept

all factual allegations as true, construe the complaint in the light most favorable to

the plaintiff, and determine whether, under any reasonable reading of the

complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*,

515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292

F.3d 361, 374 n.7 (3d Cir. 2002)). In resolving a motion to dismiss pursuant to

Rule 12(b)(6), a court generally should consider only the allegations in the

complaint, as well as "documents that are attached or submitted with the

complaint, . . . and any matters incorporated by reference or integral to the claim,

items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a). Rule 8(a)(2) requires that a complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief, "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint attacked by a Rule 12(b)(6) motion to dismiss need not contain detailed factual allegations, it must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. ___, 129 S. Ct. 1937, 1949 (2009). To survive a motion to dismiss, a civil plaintiff must allege facts that "raise a right to relief above the speculative level . . . ." *Victaulic Co. v. TIeman*, 499 F.3d 227, 235 (3d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). Accordingly, to satisfy the plausibility standard, the complaint must indicate that defendant's liability is more than a "sheer possibility." *Iqbal*, 129 S. Ct. at 1949. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of

entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Under the two-pronged approach articulated in *Twombly* and later expounded upon and formalized in *Iqbal*, a district court must first identify all factual allegations that constitute nothing more than "legal conclusions" or "naked assertions." *Twombly*, 550 U.S. at 555, 557. Such allegations are "not entitled to the assumption of truth" and must be disregarded for purposes of resolving a Rule 12(b)(6) motion to dismiss. *Iqbal*, 129 S. Ct. at 1950. Next, the district court must identify "the 'nub' of the . . . complaint – the well-pleaded, nonconclusory factual allegation[s]." *Id.* Taking these allegations as true, the district judge must then determine whether the complaint states a plausible claim for relief. *See id.*

However, "a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Phillips*, 515 F.3d at 231 (citing *Twombly*, 550 U.S. at 556-57). Rule 8 "does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Id.* at 234.

## III.   FACTUAL AND PROCEDURAL BACKGROUND

In accordance with the standard of review applicable to a Motion to Dismiss, the following facts are derived from the Plaintiffs' Amended Complaint (doc. 26)

and viewed in a light most favorable to the Plaintiffs. Plaintiff Robert J. Gach, Jr. ("Gach"), is the owner of property located at 100 East Main Street in Fairfield, Pennsylvania, and the owner and manager of Ventura's Restaurant and Pizzeria, LLC ("Ventura's") situated on said property. (Doc. 23, ¶ 4). Defendant Richard Hileman II ("Hileman") is and was the Police Chief of the Police Department for the Defendant Carroll Valley Borough at all relevant times. (*Id.* ¶ 5). Also at all relevant times, Defendant Ron Harris ("Harris") is and was the mayor of the Defendant Carroll Valley Borough and Defendant Robert Stanley ("Stanley") is and was the mayor of Defendant Fairfield Borough. (*Id.* ¶¶ 7, 9). Pursuant to a contractual agreement, the Defendant Borough of Carroll Valley supplies police protection to the Defendant Fairfield Borough. (*Id.* ¶ 11).

The general premise of the Amended Complaint is that the Plaintiffs believe and aver that the Carroll Valley police officers have engaged in a campaign of harassment against both Plaintiffs. The Amended Complaint sets out several incidents of alleged harassment. First, the Plaintiffs allege that the Carroll Valley police officers have prohibited one of Gach's female African American tenants from using a public parking space which has no signage limiting parking. (*Id.* ¶¶ 15, 17). Second, Gach asserts that in June of 2011, he suffered a loss of income anticipated from an outdoor live band performance when Defendant Hileman

threatened to arrest the property owner whose land Gach had secured for the performance. (*Id.* ¶¶ 21-23). Gach asserts that another local establishment had been permitted to hold an outdoor live band performance one year prior. (*Id.* ¶ 24).

After this incident, Gach hired counsel to contact both municipalities about the conduct of the police officers during the summer of 2012. (*Id.* ¶ 25). Gach's counsel sent letters to both Mayors Harris and Stanley concerning the harassment being carried out by the Carroll Valley police officers in Fairfield Borough. (*Id.* ¶¶ 26-27). Neither Mayor took action to discipline the officers for their conduct. (*Id.* ¶¶ 30-31). Within a few days of the letters' mailing, Defendant Hileman came to Ventura's to warn Gach "to watch his back." (*Id.* ¶ 28). Thereafter, the Carroll Valley police officers began ticketing trucks delivering product to Ventura's whether parked legally or not. (*Id.* ¶ 33). The Carroll Valley police officers have also begun to wait near Ventura's restaurant to follow customers and initiate traffic stops to conduct driving under the influence ("DUI") testing. (*Id.* ¶ 36). Gach notes that he was pulled over himself after leaving Ventura's on November 14, 2009 for a DUI traffic stop and that as a result, his reputation has been harmed because "people in town believe he either had a DUI or paid the police off." (*Id.* ¶ 37). Potential customers have now become hesitant to eat at Ventura's because of a fear of harassment and Ventura's has suffered a "loss of profits" as a result. (*Id.* ¶¶ 38,

39).

## IV.   DISCUSSION

In the Amended Complaint, the Plaintiffs assert that the Defendant Boroughs and Mayors Harris and Stanley are engaging in, and have permitted municipal employees to engage in, an ongoing campaign to deprive the Plaintiffs of their property interests without just compensation and have intentionally harassed the Plaintiffs in order to defame the Plaintiffs, disparage their business reputation, discourage patronage at Ventura's, and interfere with the Plaintiffs' right to use their property in a lawful manner. The Plaintiffs assert that they have suffered financial damage as well as injury to their reputation as a result of the Defendants' actions. The Plaintiffs' Amended Complaint asserts a mix of legal theories which all center on this harassment.

Although the Amended Complaint is less than pellucid, the Plaintiffs offer some clarification of their claims in response to the Defendants' Motion, which the Plaintiffs assert has misapprehended and narrowly construed the Plaintiffs' theories of liability. The Plaintiffs explain in their brief that Count I is a claim for violation of their Fourth Amendment rights to be free from unreasonable searches and seizures as a result of the November 14, 2009 traffic stop and their Fifth Amendment right to be free from uncompensated regulatory takings. (Doc. 28, p.

17). In Count II, the Plaintiffs assert a claim for civil conspiracy against the Defendant Boroughs and Mayors Harris and Stanley pursuant to 42 U.S.C. § 1985(3), contending that the Defendants colluded and conspired to intentionally violate the Plaintiffs' constitutional rights. Finally, in Count III, the Plaintiffs assert a claim for neglect to prevent conspiracy pursuant to 42 U.S.C. § 1986 against the Defendant Boroughs and Mayors Harris and Stanley for failure to prevent the civil conspiracy alleged in Count II. The Defendants contend in their Motion that each of the Plaintiffs' claims fail as a matter of law. We address the claims *seriatim*.

## A.    Fourth Amendment Claim[1]

In support of his Fourth Amendment claim, Gach contends that the "Defendants violated Plaintiff Gach's rights under the Fourth Amendment when they pulled Gach over for a DUI stop without any probable cause or warrant to support the stop." (Doc. 28, p. 19). Gach contends that this incident occurred on November 14, 2009 and that the Defendants targeted Gach for this unreasonable traffic stop without probable cause to do so. (*Id.*).

It is true, as the Plaintiffs assert, that the Fourth Amendment protects the

---

[1] While it is unclear from the styling of the Plaintiffs' Amended Complaint whether Count I is brought on behalf of both Plaintiffs or only on behalf of Plaintiff Gach, a fuller review of the arguments in the Plaintiffs' opposition brief reveals that this Fourth Amendment claim centers on the November 14, 2009 traffic stop of Plaintiff Gach only and thus has no connection to Plaintiff Ventura's. We thus consider this claim as it relates to Plaintiff Gach only.

right of people to be secure in their persons from unreasonable searches and

seizures at the hand of the government. U.S. CONST. AMEND. IV. The Plaintiffs are

also correct that it is well settled that "in Fourth Amendment terms, a traffic stop

entails a seizure of the driver 'even though the purpose of the stop is limited and

the resulting detention quite brief'" and that traffic stops must thus be supported by

adequate justification to be considered reasonable. *See Brendlin v. California*, 551

U.S. 249, 255 (2007). The Defendants contend, however, that despite these general

principles of law and regardless of the veracity of the Plaintiffs' limited factual

allegations, the Fourth Amendment claim nonetheless fails on statute of limitations

grounds. We agree with the Defendants.

In *Wilson v. Garcia*, 471 U.S. 261 (1985), the Supreme Court held that

actions arising under 42 U.S.C. § 1983 are best characterized as personal injury

claims for purposes of calculating the statute of limitations and that state law

statute of limitations will thus govern Section 1983 actions. *Wilson*, 471 U.S. at

279. The Third Circuit adopted this mandate in *Kost v. Kozakiewicz*, 1 F.3d 176

(3d Cir. 1993), where it applied Pennsylvania's two-year limitations period for

personal injury actions, established by statute at 42 PA. CONS. STAT. § 5524, to a

Section 1983 claim. *Kost*, 1 F.3d at 189-90. Thus, pursuant to *Wilson* and *Kost*, the

statute of limitations applicable to Gach's Fourth Amendment claim is two years.

Gach asserts that "on or about Saturday, November 14, 2009," he left his restaurant and noticed a police vehicle in his parking lot and that, despite it being "well known that [Gach] does not drink," a police officer followed Gach and pulled him over to perform a DUI stop. (Doc. 23, ¶ 35). By operation of the two-year statute of limitations applicable to Fourth Amendment claims, Gach's window for filing a Section 1983 complaint arising from this traffic stop expired on November 14, 2011. Because Gach did not commence this action until August 9, 2012, nearly nine months beyond the applicable statute of limitations, we will grant the Defendants' Motion and dismiss Gach's Fourth Amendment claim with prejudice.[2]

## B. Fifth Amendment Claim

The Plaintiffs next assert that the Defendants' actions in harassing the Plaintiffs have had an "unreasonable and adverse economic impact on Plaintiffs' distinct investment-backed expectations for the use of Plaintiffs' land" in violation

---

[2] The Plaintiffs' only response to the Defendants' statute of limitations argument is that a statute of limitations analysis is premature because the application of a statute of limitations cannot be raised in a Rule 12(b)(6) motion but must instead exclusively be raised in a responsive pleading as an affirmative defense. This position was long ago rejected by the Third Circuit Court of Appeals and we decline to revisit or reconsider this well settled law. *See Oshiver v. Levin, Fishbein, Sedran & Berman*, 388 F.3d 1380, 1384 n.1 (3d Cir. 1994) ("While the language of Fed. R. Civ. P. 8(c), indicates that a statute of limitations defense cannot be used in the context of a Rule 12(b)(6) motion to dismiss, an exception is made where the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading.").

of the Fifth Amendment's Takings Clause. (Doc. 28, p. 18). The Plaintiffs claim

that by ticketing Ventura's delivery drivers and patrons without a legitimate basis

for doing so, the Defendants have caused the Plaintiffs to lose customers and thus

profits. The Plaintiffs cite to *Pennsylvania Coal Company v. Mahon*, 260 U.S. 393

(1922) and *Penn Central Transportation Company v. City of New York*, 438 U.S.

104 (1978), two landmark regulatory takings cases, for broad principles of takings

jurisprudence in attempt to support their claims. Despite the dearth of applicable

authority put forth by the Plaintiffs, our own review of relevant law reveals that the

Plaintiffs have entirely failed to state a viable claim.

Neither *Pennsylvania Coal* nor *Penn Central* are factually analogous to the

instant case, nor do the Plaintiffs make any attempt to draw any analogies thereto.

Instead, Plaintiffs cite to theses cases for the proposition that when governmental

regulation goes too far, it can become an unconstitutional taking. In *Pennsylvania

Coal*, the Supreme Court for the first time held that a regulatory act can constitute a

taking for Fifth Amendment purposes depending on the extent of the diminution in

value to the plaintiff's property. *See Pennsylvania Coal*, 260 U.S. at 326 ("The

general rule at least is, that while property may be regulated to a certain extent, if

regulation goes too far it will be recognized as a taking."). In *Penn Central*, the

Supreme Court expounded upon the concept of investment-backed expectations

which emerged from its decision in *Mahon* and limited that decision's seemingly

broad reach; the *Penn Central* Court rejected the appellants' contention that they

"may establish a 'taking' simply by showing that they have been denied the ability

to exploit a property interest that they heretofore had believed was available for

development," instead directing courts to weigh the nature of the governmental

invasion or deprivation in the context of the value of the property as a whole. *Penn*

*Central*, 438 U.S. at 130.

Our colleague Judge William W. Caldwell has cogently summarized and

described these broad principles as follows:

> Recent cases have set forth the standard to be used in
> determining whether a taking under the Fifth Amendment
> has occurred. Three significant facts are to be considered:
> (1) the economic impact of the regulation on the
> claimant; (2) the extent to which the regulation has
> interfered with distinct, investment-backed expectations,
> and (3) the character of the governmental action. The
> Supreme Court has also emphasized, however, that there
> is no "set formula for identifying a 'taking' forbidden by
> the Fifth Amendment." Instead, an *ad hoc* factual inquiry
> into the circumstances of each particular case is
> necessary.

*Case v. U.S. Dept. of Agriculture*, 642 F. Supp. 341, 343 (M.D. Pa. Sept. 4, 1986).

We balance these factors *seriatim*, guided as we do by the principles of *Penn*

*Central* and *Pennsylvania Coal*, ultimately concluding that the greater balance of

these factors weighs against the Plaintiffs' claims.

In considering the first factor, the economic impact on the claimant, we are compelled to note that the Plaintiffs' Amended Complaint leaves us unable to measure the exact degree of the economic impact caused by the Defendants' actions. The Plaintiffs contend that they have suffered a loss of customers and lost profits as a result of the Defendants' actions, but plead no facts in support of this allegation. (*See* Doc. 23, ¶ 54). We are unable to determine from the face of the Complaint or from the conclusory allegations therein whether these losses are slight or severe or whether they were caused by the Defendants' actions or rather by an economic downturn. Without any indication as to the degree of their alleged loss, the Plaintiffs' Amended Complaint leaves the Court unable to adequately consider the first factor. In the end, this is of little moment however, because we find that the balance of the second and third factors weigh heavily against the Plaintiffs' claims. Ultimately, we are compelled to conclude that the Plaintiffs have failed to state a Fifth Amendment takings claim.

With respect to the second factor, the Plaintiffs have not plead facts demonstrating that the Defendants have interfered with any reasonable expectation for the use of their property. The only expectation that can be inferred from the Amended Complaint is that the Plaintiffs apparently assume that their customers should not be subjected to DUI traffic stops when leaving the Plaintiffs' property

and that the Plaintiffs' delivery drivers should not receive or be threatened with traffic tickets for parking on the public street around and near the Plaintiffs' property. However, "distinct, investment-backed expectations are reasonable *only* if they take into account the power of the state to regulate in the public interest." *Pace Res., Inc. v. Shrewsbury Twp.*, 808 F.2d 1023, 1032 (3d Cir. 1987). Indeed, "a property owner's reasonable expectations as to the possible uses of his property are always circumscribed by the limitations on its use that may be imposed by the state in the public interest." *Id.* at 1032. It is hardly reasonable for a business owner to expect that their customers will be free from traffic stops upon leaving their premises, and it is similarly unreasonable to expect that those patrons who park in public parking spaces will not be exposed to parking tickets. Such actions undertaken by the state in the public interest are simply not unreasonable use limitations. *See id.*

Assuming *arguendo* that the frequency of traffic stops and parking tickets was abnormally and unreasonably high, the Plaintiffs must also plead not only that their reasonable expectations have been interfered with but that the deprivation is so great as to virtually eliminate the property's economic value. Even where a claim involves reasonable investment-backed expectations, "a taking through an exercise of the police power occurs only when the regulation 'has nearly the same

effect as *complete destruction of the property rights*' of the owner." *Pace*, 808 F.2d at 1033 (emphasis added).  As we have noted, the Plaintiffs have plead very little as to the degree of their loss. Guided by the precedent discussed above, we simply cannot conclude that an unsubstantiated loss of profits and/or customers, the extent of which is wholly unexplained by the Plaintiffs, constitutes the total destruction of property rights contemplated by *Pace*. On the Amended Complaint before us and drawing all inferences in Plaintiffs' favor, we cannot but conclude that the Plaintiffs have failed to plead that the Defendants either substantially or effectively destroyed the value of their property as required by *Pace* and thus find that the second factor also weighs against the Plaintiffs' takings claim.

Finally, we must consider the nature of the government action. It has long been held that the most compelling cases for a taking exist "when the interference with property can be characterized as a physical invasion by the government." *Case*, 642 F. Supp. at 344. According to the Plaintiffs' Amended Complaint, none of the complained-of conduct took place on the Plaintiffs' property or constituted a physical invasion of the Plaintiffs' property or rights in any way. Instead, the Plaintiffs allege that the Defendants have invaded the minds of their customers in attempt to discourage their patronage, having the incidental effect of limiting the Plaintiffs' profits. We find no basis in Fifth Amendment jurisprudence for such an

overreaching argument, and the Plaintiffs in their brief response have offered no compelling argument in support of such a claim. The Plaintiffs have simply failed to plead *any* physical invasion or other limitation on the lawful use of their property sufficient to state a Fifth Amendment regulatory takings claim. We thus find that the character of the government's actions, like the larger balance of all of these factors, weighs against the Plaintiffs' favor. For these reasons, we conclude that the Defendants' actions do not constitute a regulatory taking of the Plaintiffs' property and will dismiss the Plaintiffs' Fifth Amendment claim.[3]

### C.    Conspiracy and Neglect to Prevent Conspiracy Claims

The Plaintiffs next claim that the Defendants have conspired to intentionally discriminate and commit constitutional violations against the Plaintiffs in violation of 42 U.S.C. § 1985(3). Section 1985(3) provides that it shall be unlawful for "two or more persons . . . [to] conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . ." *Id.* The Plaintiffs also assert that the Defendants have failed to prevent said conspiracy in violation of Section 1986. We address each of these claims in turn.

---

[3] Having found that both the Fourth and Fifth Amendment claims lack substantive merit, we do not address the Defendants' arguments with respect to *Monell* liability or the liability of the individual Defendants.

The Supreme Court has held that a Section 1985(3) conspiracy claim requires a plaintiff to allege the following four elements:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*United Brotherhood of Carpenters & Joiners, Local 610 v. Scott*, 463 U.S. 825, 828-29 (1983); *see also Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). The Supreme Court has repeatedly held that the second element requires a showing that the actions were "motivated by some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *United Brotherhood*, 463 U.S. at 829. Courts have further held that to survive a motion to dismiss, a complaint for civil rights conspiracy must "identify with particularity the conduct violating the plaintiff's rights, the time and place of the actions, and the people responsible therefor" and that broad allegations and conspiratorial speculation are insufficient to establish a Section 1985 claim. *See Boddorff v. Publicker Indus. Inc.*, 488 F. Supp. 1107, 1112 (E.D. Pa. Mar. 25, 1980).

As an initial matter, we note that the Plaintiffs' Amended Complaint fails to satisfy this particularity requirement. The Plaintiffs do not allege any facts which

establish the time and place of the Defendants' conspiratorial conduct or give rise to the inference that the Defendants at any time met, conferred, and agreed to discriminate against the Plaintiffs. Indeed, the Plaintiffs' Amended Complaint is devoid of anything beyond conclusory allegations establishing conspiratorial conduct on the part of any or all of the Defendants. This lack of any level of particularity is fatal to the Plaintiffs' Section 1985(3) conspiracy claim.

However, we are compelled to note that the Plaintiffs' Section 1985(3) claim is deficient for a second, and perhaps more critical, reason. As noted above, the Supreme Court has read into Section 1985(3) the requirement that the conduct at issue be clearly motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *United Brotherhood*, 463 U.S. at 828-29. Although the Amended Complaint is again less than clear, the Plaintiffs explain that their Section 1985(3) claim is based on "a conspiracy to deprive plaintiff of the equal protection of the laws with regard to plaintiffs' property and individual rights under the Fifth and Fourteenth Amendments." This contention, however, is only a formulaic recitation of *United Brotherhood*'s animus requirement and fails to plead any factual basis establishing that racial or otherwise invidious animus motivated the Defendants' conduct. At best, the Amended Complaint establishes a "tattletale" predicate: that the Defendants focused their efforts on policing the

general area surrounding the Plaintiffs' property after they mailed complaints about the police officers to the Defendant Townships. Such motivation, however ill-conceived, is insufficient to satisfy the express requirements of *United Brotherhood* and its progeny, and for this additional reason, we will dismiss the Plaintiffs' Section 1985(3) claim for civil rights conspiracy.

Finally, the Defendants contend that because the Plaintiffs' civil rights conspiracy claim is without merit, we must also dismiss the Plaintiffs' claim for neglect to prevent a civil rights conspiracy pursuant to 42 U.S.C. § 1986. Section 1986 provides, in pertinent part, that

> [e]very person who, having knowledge that any of the wrongs conspired to be done [as included in Section 1985] are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses to do so, if such wrongful act be committed, shall be liable to the party injured . . . for all damages caused by such wrongful act.

42 U.S.C. § 1986. The express language conditions relief for neglect on the requirement that the wrongful act be actually committed, and courts in this Circuit have held that a Section 1985 violation is a condition precedent to a viable Section 1986 claim. *See Rogin v. Bensalem Twp.*, 616 F.2d 680, 696 (3d Cir. 1980) (holding that "[b]ecause transgressions of § 1986 by definition depend on a preexisting violation of § 1985, if the claimant does not set forth a cause of action

under the latter, its claim under the former necessarily must fail also"); *see also Koorn v. Lacey Twp.*, 78 Fed. Appx. 199, 208 (3d Cir. 2003) ("Without a cognizable § 1985(3) claim, a claim for violation of § 1986 must also fail."). Thus, because we have concluded *supra* that the Defendants have not committed a civil rights conspiracy pursuant to Section 1985, we must also conclude that Plaintiffs have failed to state a claim for neglect to prevent said conspiracy.

## V. CONCLUSION

For all of the reasons articulated herein, the Court will grant the Defendants' Motion to Dismiss (doc. 26) and dismiss the Plaintiffs' Amended Complaint in its entirety. While we are inordinately reluctant to do so, we will grant the Plaintiffs leave to amend their Complaint, in accordance with the stated policy of this Circuit, cautioning the Plaintiffs as we do that absent substantial revision consistent with this opinion, their pleading will suffer the same fate. *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251-52 (3d Cir. 2007) ("Our precedent supports the notion that in civil rights cases district courts must offer amendment – irrespective of whether it is requested – when dismissing a case for failure to state a claim unless doing so would be inequitable or futile."). This leave to amend is restricted to Plaintiffs' Fifth Amendment claim only. The Plaintiffs' Amended Complaint patently establishes that the Fourth Amendment

claim therein is well beyond the applicable statute of limitations. Likewise, it is our considered view that nothing in an amended pleading could save the Plaintiffs' conspiracy and neglect to prevent conspiracy claims. Leave to amend all of these claims would be futile and is accordingly denied. An appropriate order shall issue.